Good morning, Mr. Gerrard. You may proceed. Good morning, Your Honors. May it please the Court, my name is Thomas Gerrard. I represent Dr. Lissagor in his appeal. The only reason that we are here today is because Dr. Lissagor was called to active duty serving combat in Iraq. While he was there, he was called to answer for his conduct and service. And when he returned from Iraq, his employer, the VA, used those facts and those facts alone to suspend Dr. Lissagor's privileges to practice medicine. Mr. Gerrard, are you saying that anything a service member does while they're over in a combat zone is irrelevant to their civilian employment, no matter what they've done? No, Your Honor, I'm not saying that. What I am saying is that under 4311, or 38 U.S.C. Section 4311A, it is a violation of the service member's rights to use the background or the idea, and I'm going to brief the cases, Erickson and Petty as well, but it's a violation of the service member's rights to use their conduct and service as the basis for an adverse employment action. And that's exactly what happened here. Well, let me get the facts straight on this. Your client is a serving both physician and officer of the armed services. He engages in conduct which results in him facing court martial charges, including one spec for conduct on becoming an officer. He cuts a deal with the armed forces. He's kept in country rather than allowed to return home until he resolves these court martial charges. He cuts a deal in which they drop the charges in return for him resigning from the armed forces. He comes home. He fills out a form when he gets home for the VA, and he fails to accurately list what happened. And as I understand the VA's position, it's not what he did. It's that he falsified the information about what he did. Have I summarized accurately what they're saying? I'm sorry, Your Honor. That's not an accurate summary. I can clarify a couple points for the court. As noted in my briefing as well, there were at one time court martial charges preferred. However, those were the disciplinary action that occurred against Dr. Lizagor with a non-judicial punishment. That's true. I didn't say he was court martialed. It was done in lieu of a court martial. I think my point's been made. Secondly, there's no... Well, your point may have been made, but it doesn't satisfy me. You're saying... He took an NJP, took an Article 15. No, there was an investigation. That's true, Your Honor. And the presiding officer determined that it would be inappropriate to proceed under the UCMJ for the court martial and that the preferable action would be to follow the NJP, which was done. There was no deal to Dr. Lizagor's knowledge and there's no record anywhere other than the assertions of a captain who was in Iraq that there was a deal. There was no deal for Dr. Lizagor to retire. Was he at one time facing a court martial charge? At one time, the court martial charges were preferred. And then after he arranged to resign or agreed to resign from the army, the court martial charges were dropped. I'm sorry, Your Honor. He did not agree. There was no deal. He didn't resign. He retired in a normal course. That is what occurred in this case. But my point is clear. There is no record. There's nothing in this record that says that there was a deal other than the assertions of the captain. The arguments of the government are fine. But had there been a deal to set aside court martial proceedings in lieu of a retirement, that would have been right. I'm sorry, Your Honor. I'm confused by the theory of your case. You're alleging a USERA violation. Are you alleging that even though they said they were moving him for lack of candor, that was just a ruse, and they were really discriminating against him because he had served in the military? Or is your theory that there was no obligation for him to answer these questions, or that he answered them truthfully, not untruthfully? I don't understand what the theory is. Okay. Your Honor, the government's argument is that Dr. Lizagor was fired for lack of candor. And that's simply— It's something that's the basis that was articulated in the proposed removal and in the removal decision. They didn't just come up here on appeal and start throwing around lack of candor. That's what's disclosed. So are you saying that it wasn't really the reason, and they were just using that as a front to hide their real reason? That it was a pretext? In the court below, we argued that it was a pretext, Your Honor. But you're not—I mean, there's no dispute. Is there that they fired him in substantial part, if not entirely, for lack of candor? That's what they said. So you've got to either accept that or argue that they're lying about that. Your Honor, they can call it anything they want. They can call it lack of candor, and they can paint him purple and call him a big fat liar. It doesn't make a difference. The fact of the matter is the basis of their decision is his conduct and service in Iraq. The entire purpose of USERA is that we do not— Okay. So that's what I wanted to understand. So you're saying he was—you're not disputing that he had to answer these questions. You're not disputing— No, he did answer the questions. He did answer the questions. And he answered them honestly. Okay. So you're disputing that his answers demonstrated a lack of candor? You think that his answers were absolutely true? That's correct, Your Honor. That's correct. Are you really arguing that there was a lack of candor, or are you arguing that we cannot view this as a lack of candor because the basis to conclude that he wasn't truthful was his military service, and you can't look at that? You can't separate—Your Honor, the lack of candor issue was important in the trial, or the Marist System Protection Board, because at that time, we had a 43-16 claim. We were arguing before that court, and a lot of the record, and a lot of the argument before that court, and a lot of the testimony before that court was whether or not there was notice to Dr. Lizagore that lack of candor is a charge that would result in termination. We abandoned that on appeal, and we're focused on the fact that discrimination under USERA is when a person's—when a service member's conduct and service, just like it was in Petty, as it could have been, as I'm going to discuss in Erickson 1 and Erickson 2, that their service and conduct cannot be a basis for their termination. In this case, you can't separate Dr. Lizagore's service and his conduct in Iraq from the reasons that he was terminated. Let me ask you a hypothetical to see if we can tease this out. Let's suppose a soldier is serving in Iraq and commits an act that would result in him going to a court-martial, and that he is court-martialed and he is punished. Then he leaves the Army, comes back, he wants to get certified for a new position, and the question is, have you ever been court-martialed? And he says, no. Flat-out falsehood. Are you saying that, well, because his conduct and service cannot be a factor in any sort of personnel action, that he cannot be fired for that falsehood? Yeah, Your Honor, the hypothetical—the answer to the hypothetical is no. I don't make that assertion. If somebody lies, that's what they're doing. They're lying. And if the employer wants to terminate him for lying, that may or may not be the case. We both can't talk at the same time. Generally, when a judge talks, you listen. If his charge is not lying, it's lack of candor. Are you saying that's an inappropriate charge, or that they cannot make that charge because the basis to conclude that there's a lack of candor was his conduct in service, and you, Sarah, says that doesn't count? There's a difference, Your Honor, between lack of candor—and I think this Court recognizes that difference—and an actual assertion of a lie. I think there's a difference. So how subtle that difference is, I'm not sure. But what I'm trying to get at is, are you arguing that his conduct in service doesn't count, and therefore any charge, whether it's lack of candor, lying, any charge, if it's based on what he did when he was in the service, that cannot be a factor in a personnel action? If the charge is lack of candor, Your Honor, and the investigation that results in the charge of lack of candor is an investigation of his service in Iraq, then I would answer the question yes, that cannot be used as a basis for his termination. How is that different than Judge Lynn's hypothetical, which, as I understood, you answered, at least as to hypothetical, that that would not be a use-error problem? The hypothetical asks a question about a lie, I believe, Your Honor, and I said that there's a subtle difference between an outright lie and a lack of candor. In this case, Dr. Liz Agour answered the questions on Bet-Pro truthfully. So let me twist Judge Lynn's hypothetical just a bit. If the question was not, have you ever received a court-martial, and he said no, if the question was, please list any kind of disciplinary proceedings, including court-martials, and listed a whole lot of things, and he listed nothing, would that also not be a use-error violation? Where would that fall on the list of court-martial proceedings? He didn't answer the question. In other words, he didn't list the court-martial proceedings. Would that also be enough of a lie that puts it on the okay-to-do law over the okay-to-do line? Your Honor, I'm not sure I can answer that question. I can answer the question as a Dr. Liz Agour. I think that what you are asking is, at what point does lack of candor step over and become a lie? I don't know what point that is. I do know what happened in this case. I do know that the triggering event for this case was a letter that Ms. Aileen Porter looked at Section 34 of my appendix. You'll see that an unsolicited letter came from the Army. When Ms. Porter saw that letter that raised a red flag in her mind, they went back to the Bet-Pro application. Dr. Liz Agour answered the question, have your That's an honest answer. He filled the entire block of information. What happened? I was under a peer review, etc., etc., etc. When asked for clarification on why your privileges were suspended, Dr. Liz Agour gave Ms. Aileen Porter, the privileges technician, for lack of a better term, the information that was needed to be able to contact the Army to find out exactly everything that happened during Dr. Liz Agour's service there. Those are exactly the facts that the VA used to suspend his privileges. Those are exactly the facts that the VA used to investigate him under the AIB process. Those are exactly the facts that the VA used to terminate. Let me ask you, counsel. You have a very broad statement, which bothers me. That is, conduct and service cannot be the basis for adverse action under USERA. It seems to me, if you're really going to stand by that, then you're saying that if somebody commits a mass murder and comes back and wants to serve as a police officer, that that conduct is simply not Your Honor, I'm not arguing that on behalf of a police officer. That question has already been asked and answered, though, by the Sixth Circuit in the Petty case. It didn't involve a mass murderer, and we don't have those facts here. We have a doctor who performed a surgery to save someone's life. You have a doctor who held up an amputated arm like a trophy. You have a doctor who used a hunting knife to perform an amputation, and you have the potential. You had him charged with conduct unbecoming an officer, and there's plenty of authority that where a doctor who is also an officer engages in misconduct against his patients, that that's conduct unbecoming an officer. I'm way into my rebuttal time, Your Honor, and I apologize. I do want to address this. Take your time. Dr. Lizzy Gore sought approval to use that particular instrument at the time of that surgery from his colleague. It was approved by his colleague. It was sterilized, and he used the photograph that was taken by Dr. I'm not trying to rationalize behavior. I'm just telling you exactly what happened. I read the record. It's scrutinized. Thank you, Your Honor. The photograph was taken for educational purposes. It wasn't as a trophy. Dr. Lizzy Gore has no... He's got an incredible career. He doesn't need the trophy. If you were taking a photograph for educational purposes, wouldn't you sort of lay it out under lights on a table as opposed to holding it up by the hand with your hand? Your Honor, I wasn't there. Dr. Lizzy Gore was there, and we have the statements that were in the record, but back to your original question about the broad statement. I don't make that broad statement. I don't need to. Congress wrote the law, and the law says you can't use someone's military service to their disadvantage to their civilian employment. That's true. That's exactly what we have here. The question about a mass murderer being able to become a and he got enlisted people drunk by making alcohol in Iraq, and he came back and he didn't tell the truth about it. He was investigated for it, and that would have been a violation of USERA for them to carry on and terminate his employment. They never did, in fact, terminate his employment in that case, but as far as the discrimination claim goes, they did discriminate against him because the investigation was about his service in Iraq. All right. Your time has expired. We'll give you a little bit of time and rebuttal if you need it. Let's hear from the government now. Ms. Vanneman? Good morning. May it please the court. The petitioner really is attempting to use USERA as a shield to provide kind of absolute immunity from whatever he did with regard to his status as a service member or his service in Iraq, and there's no support for that. In fact, the MSPB found, based upon a huge record, that there was no evidence in the record, nothing to support any of the USERA claims. His burden first was to establish that there was discriminatory motive. Can I ask, if this case had come down, if there had been no vet pro form that he filled out, but his colleagues or his supervisors simply received notice after they put him back in as to his conduct in Iraq, and on that basis, on that basis alone, they decided they were going to fire him, not for lack of candor. There was no candor question because there was no form filled out. Would that be a USERA problem or not, in the government's view? I'm sorry, if there were no vet pro and- If he had never filled out anything, so there's no lie, there's no lack of candor, he didn't do anything wrong in that regard, but they became apprised of his background in the record that we've discussed this morning of what occurred in Iraq, and they terminated him for that and for that alone. Would that be a problem under USERA or not? No, Your Honor, because here, for example, the testimony was clear from the three doctors who testified that they would have approached these matters with respect to Dr. Lizagore in the same manner if he had done these things in a civilian hospital. It didn't matter where he was in Iraq or that he was at the service, it was what he did. In terms of the knife, the hunting knife and the photograph of the arm, because under USERA, you have to establish a discriminatory motive, so if they would have done the same thing if he- Let me back up. The VA is obligated, we put in the records the handbooks and manuals to credential and privilege doctors, and actually Dr. Lizagore sat on the medical executive committee that passed on applications by surgeons, and the VA is required to, in exercising due diligence in credentialing people to view any material, and even periodically during their tenure, they have a responsibility to the VA. So if the VA gets an alert from one of these or two of these national data banks, the Healthcare Integrity Data Bank and the FSMB, the state medical boards, that there were problems with Dr. Lizagore, they have to primary source verify information about the doctors so that they are assured that whatever doctor is continuing to perform surgeries, for example, that that doctor is qualified. Otherwise, they open themselves up to negligent credentialing issues. What would happen if you take Judge Crow's hypothetical, where there is no vet pro application? We're only talking about conduct here. And the surgeon in question was acting under orders and performing surgery using techniques that perhaps another hospital disagreed with. Would it be proper for the hospital in the United States to say, well, we declined to hire you because we don't approve of the kind of techniques that you used when you were in Iraq? Is that a basis for a USERRA violation? No, Your Honor. In that situation, the VA would be looking at actually the underlying facts, what actually happened, what is the standard of care. Here, that's not what happened because it was a lack of candor and not disclosing information that he should have disclosed, and that he had ultimately admitted at the MSPB hearing that he should have disclosed. Well, I'm aware of that, but what I was trying to get to is, when is it proper to look at somebody's conduct in the military, and when is it not proper to look at somebody's conduct? Well, for a VA hospital, it would be proper to look at a doctor's conduct if it affected decisions on credentialing and privileging. But again, the doctors... What about hypothetically if I'm going to employ someone, and they're from the military, and a civilian position, and I get anonymous letters that say, this individual who served in Iraq for two years was part of a rowdy group of officers who got drunk every night, and I looked at that behavior, and I said, I'm not going to hire anybody who had two years and was drunk every night. Would that be a USERRA problem? No, Your Honor. I think what a hospital here, or the VA, would be required to do is look at the underlying facts, and give their doctor an opportunity to be heard about what happened in the underlying facts. That's not what we have here, because the VA wasn't really interested in what actually happened over there, which is what Dr. Lisenborg kept trying to litigate. I know that, but on this hypothetical, I understood in response to my first question, you said it would have still been a problem, even if this lack of candor issue weren't there. And I thought you were getting towards articulating a test along the lines of, if it were something that if he had done in a civilian capacity, you wouldn't have liked, just because he happened to have been in service when he did it, like drinking, it would be okay, because it wouldn't be discriminatory based on service. And I don't know whether that's right or wrong, or whether I agree or disagree. I'm just trying to find out what standards it would apply. Well, I think the conduct might not be okay if the VA were looking at, do they want to have this doctor on staff? But what I'm trying to get at is, here, the doctors testified that they would have viewed these matters in the same way had Dr. Lisenborg been at a civilian hospital. So the fact that he was in the military in Iraq was not really a motivating or substantial factor in their decision. So to my hypothetical about this guy that got drunk every night when he was in the service, your answer would be, if it was the fact that he was drunk, it doesn't matter the context of the venue. And if I could establish that, then it would not be a violation of these standards. That's correct, Your Honor. It seems to me that you're on a dangerous downhill trip if you're not going to have some kind of qualification about whether the conduct is proper within a military ambit, because there are things that you can do in a combat zone that are unacceptable in civilian society. And I think USARA protects service members who engage in what is proper conduct in combat and yet would be viewed with askance by civilians. Is that not correct? Well, that's where the Sheehan case set out the standards for proving a USARA violation. The burden is on the petitioner to establish either a discriminatory motive, that is, someone had animus against this person because of this status or service, and there was no evidence in the record here, or that the status or service was a substantial and motivating factor. And again, there's no evidence here. So a different fact situation would have to be a fact-specific analysis for a VA hospital to I'm concerned about your answering philosophical questions in a philosophical way. Well, maybe I could get back then, because there was a lot of discussion about lack of candor. That was the charge. Before the MSPB, Dr. Lizzagore tried to establish he had no intense lie or mislead or anything else, and that was not the charge. The charge was lack of candor. He was the chief of surgery. He filled out this vet pro, and that's really key, is that the first question, and he continued to maintain that his answer was accurate, but the first question is, have your clinical privileges ever been suspended? And instead of, well, he said yes, but he was subject to a peer review. Well, the peer review deals with quality of care, not the discipline, the NJP that was imposed. He says no issues were identified. That's not entirely accurate either, because they identified the issue of a knife and photo. No adverse privileging action was taken. He was suspended from doing surgeries from November to May, never did any more surgeries with the Army during that time. And one thing vet pro is interested in is, has the surgeon actually done surgeries? And so, what have been the outcomes? Are there any malpractice issues? And he says, my privileges were, which were in abeyance. Well, by that point, they were suspended, were fully reinstated. That's not accurate either, because the peer review recommended that his privileges be reinstated. He was a competent surgeon, but be limited to stateside, non-combat, non-stress situations. So everything about the initial answer to vet pro was really not fully forthcoming. And then when asked again to provide supplemental responses, he again deflected attention to the quality peer review, which was not the issue in the NJP. With number 17, that was the wrong answer, because it says, within the last five years, have you ever retired, you know, from the Army after questions about your clinical competence were raised? Clearly, after the he was bullying and intimidating and threatening them with court martial proceedings when he had no authority to do so. There were a lot of questions raised as the peer review started, and that went on for four or five months. And he says, no. So the VA charged him with a lack of candor. They did not charge him with intentional falsification. That's an appropriate charge. It's a proven intent. But they did prove lack of candor based upon the vet pro. I mean, he had a number of opportunities to submit replies and rebuttals, and he did. Then it went to, the VA suspended him. He went, they started this administrative investigative board because it was a complex matter. And let me just add to that. I mean, you know, we hear a lot of MSPB cases. I mean, lack of candor is not an extraordinarily unusual basis for taking action against an employee, right? Is that your experience? That's correct. And Ludlam is the key case. And the government is still obligated for lack of candor, is it not, to establish that there's some nexus with the efficiency of the service? In other words, if it was some harmless question about how many times you've been married and someone was embarrassed to list six, so they listed four. I mean, the government has to establish that there's some nexus between the efficiency of the service and the lack of candor here, right? Yes, that's right. And here they really did, Dr. O'Neill, the deciding official, said that these are really egregious instances of lack of candor. And he did it not once, but twice. As the chief of surgeon, they really couldn't count on him anymore. And given his position and responsibilities and status, it was the enormously egregious offense that couldn't be rehabilitated because he showed no remorse, still doesn't. And the other doctors who testified, the doctor who suspended and then the doctor who issued the one or more testified at the AIB hearing. And then after the decision to remove was made, he was allowed to grieve that decision. As a VA doctor, he doesn't have direct appeal rights to the board, but because it involved a matter of misconduct, he was allowed to grieve that decision. They had another full-blown hearing, abundant opportunities to try to make his case. And the administrative judge, I mean, basically the way Dr. Lizagore has framed the issue here is a substantial evidence case. Well, the administrative judge said, after reviewing the entire record, there is nothing in the record evidence to establish any USERA violation. And in fact, while the administrative judge, then under one of the theories that he's abandoned, you know, if you fire a veteran within a year, you have to do it for cause, and he was employed for more than a year. But basically, the administrative judge said, for all the reasons I've set out in this lengthy decision where there's no evidence of any USERA violation, the VA would have established cause to remove him given the lack of CANDOR. And the notice of proposed removal on the lack of CANDOR, while it was a short document, referred to the AIB, had all the documents from the Army, the AIB had a hearing, and issued a detailed report citing all the evidence in its record. And then it went to the grievance examiner, which of course had all the record up to that point, and then it went to the MSPB, and the MSPB said there's nothing in the record evidence. So he's arguing that a substantial evidence case, but here is, there was nothing. And the court's review of fact findings, especially including those based on credibility, the other doctors were credible, is very limited, and we respectfully request that the court affirm the decision of the board. All right, thank you. Ms. Benjamin, before you sit down, let me just ask you a side question about the appendices that were submitted. It seemed to me that the government went off the rails a little bit here. What happened? I apologize for that, Your Honor. Actually, this is the first time in all my years that I filed a confidential appendix, and I viewed the case as somewhat different given the Statute 1102 that provides for these enormous financial penalties for disclosing any of the Army's peer review records. So we filed a motion at the time we filed our brief for in-camera review, but I apologize for the error and the appendices. We have cases all the time with confidential information, perhaps not this sensitive, but confidential information. And this is not difficult, so I would just simply suggest that maybe you take another look through the procedures and familiarize yourself with how this is done. I will do so, Your Honor. Again, I'm sorry. Okay, thank you very much. Mr. Girard, I'll give you a minute. You used up all of your time, but if you have anything to say briefly, I'll allow you to do it. I wish I had more time, Your Honor. The standard that Dr. Lizagore and the question before the Marist System Protection Board was whether his service was whether or not there was discrimination under 4311. There is a very specific test to determine a motivating factor under 4311. Dr. Lizagore had the responsibility to show the service in Iraq played a part in the adverse employment decisions taken against him. Then the burden would have shifted to the VA to prove the affirmative defense, which has been, I guess, asserted here for the first time on appeal, that his discharge would have happened regardless of whether or not there was consideration of his service in Iraq. The test for that is a but-for causation construction. And that comes from Robinson and more. This court in Erickson has already reversed the discrimination claim where substantial evidence wasn't there. And in this case, just like in Erickson too, Your Honors, the evidence only shows that Dr. Lizagore's conduct and service, you can't apply that but-for test to this case and say, but-for Dr. Lizagore's service in Iraq, this would never happen. It just doesn't work. All right. Thank you, Mr. Charles. Your time has expired. The case is submitted.